DOROTHY S. MACMILLAN, ET AL., (MEDFORD LEAS), PLAINTIFFS-APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.

GERTRUDE MILLS, ET AL., PLAINTIFFS-APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT, AND EAST WINDSOR TOWNSHIP AND BOROUGH OF HIGHTSTOWN, DEFENDANTS.

Argued March 9, 1982—Decided May 12, 1982.

*John L. Conroy, Jr.*, argued the cause for appellants Dorothy S. MacMillan, et al. (*Brown, Connery, Kulp, Wille, Purnell & Greene*, attorneys; *Ralph A. Mariani*, a member of the Pennsylvania Bar, of counsel).

*Ann Reichelderfer* argued the cause for appellants Gertrude Mills, et al. (*Smith, Stratton, Wise & Heher*, attorneys).

*Harry Haushalter*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney).

PER CURIAM.

The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division, reported at 180 *N.J.Super.* 175 (1981).

PASHMAN, J., dissenting.

I would reverse the Appellate Division judgment substantially for the reasons stated by Judge Conley writing for the Tax Court below, *Mills v. East Windsor Tp.*, 176 *N.J.Super.* 271 (Tax Ct. 1980). I add several observations.

The majority upholds the Appellate Division determination that plaintiffs are not entitled to tax rebates under *N.J.S.A.* 54:4-3.80(a). The Appellate Division reasoned that since the statutory language is "outspoken and unambiguous," courts "must enforce the legislative will as written." 180 *N.J.Super.* 175, 177-79 (1981). The court further concluded that even if the statutory language were ambiguous, tax preference provisions must be strictly construed against those claiming exemption. *Id.* at 178. These principles, according to the Appellate Division, end the inquiry. To look to other indications of legislative purpose or to consider such criteria as "equity and common sense," *id.* at 179-80, would "preempt the legislative function." *Id.* at 180.

I agree that where the plain language of a statute suggests a certain result and there are no indications of legislative intent to

the contrary, the Court's job is clear. However that is not this case. Words take meaning from their context. Failure to consider relevant statutory policies and statutory history may cause courts to frustrate rather than implement the legislative will. The plain meaning rule does not compel us to view the statutory language out of context. Nor does it require us to ignore the history of the statute, its scope and its relation to other legislative enactments. As Justice Handler said in *Unemployed-Employed Council of N. J., Inc. v. Horn*, 85 *N.J.* 646, 655 (1981), "statutory language must be read perceptively and sensibly with a view toward fulfilling the legislative intent."

. Judges invented the rule that tax exemptions are strictly construed because they presumed that legislatures intend all citizens to pay their fair share of taxes. We use the rule because, as a general matter, it is probably a good statement of what the Legislature wants us to do. However the rule is merely a presumption; the ultimate inquiry remains legislative intent. When other indications show that the Legislature intended a broad interpretation of a tax exemption, it is not our role to thwart the legislative purpose by mechanically applying traditional rules of construction.

In this case, there is ample evidence that the Legislature intended the property rebate to be liberally construed to include "life-care" residents. As the Tax Court noted, the Legislature has made property tax relief available on a broad scale to comply with the constitutional mandate to use the income tax to grant property tax relief. *N.J.Const.* (1947), Art. VIII, § 1, ¶¶ 5, 7; 176 *N.J.Super.* at 278–79. It has also amended the statute several times, progressively broadening the categories of persons benefitted by the rebate. *Id.* at 280. Moreover, in recent years the Legislature has given special attention to the needs of the State's senior citizens. It has repeatedly granted them special tax benefits. *Id.* at 279–80. This is a further indication of a legislative desire to include plaintiffs within the scope of the statute.

As a practical matter, plaintiffs have *de facto* life tenancies. Virtually all make large down payments. The overwhelming majority of residents stay for the remainder of their lives. During the 14-year history of Meadow Lakes, for example, the corporation has attempted to terminate the residency of only two persons out of a total of approximately 900. The small technical differences between life-care contracts and life tenancies as such do not suggest any reason for granting rebates only to the latter.

All the residents of life-care facilities are elderly. They enter these communities for companionship, care and peace of mind. The unique contractual and property interests involved are designed to satisfy those needs. I do not believe the Legislature intended to exclude life-care residents from the property tax rebate merely because they had the good sense to avail themselves of an innovative living arrangement. The special needs that impel the elderly to enter life-care communities should not be frustrated by special burdens.

Finally, I respectfully reject the Appellate Division assertion that in construing statutes, judges must not "succumb to the humanistic pressures...," 180 *N.J.Super.* at 177. We should presume that the Legislature acts with such considerations in mind. There is simply no good reason to believe the Legislature intended the harsh and inequitable result of excluding the elderly residents of life-care communities from the statute's coverage. I fully agree with Judge Conley that extension of the rebate to these plaintiffs not only furthers the legislative design, but is based on "equity and common sense." 176 *N.J.Super.* at 282. I therefore dissent.

Justice O'HERN joins in this dissent.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER and POLLOCK—4.

*For reversal*—Justices PASHMAN and O'HERN—2.