ANDREW, J.T.C.
In this case plaintiff, Rutgers University Legislative Affairs Council, Inc. (RULAC),[1] challenges a determination by defendant, the Director of the Division of Taxation, that Rutgers University students living in on-campus housing are not eligible for homestead rebates under the Homestead Property Tax Rebate Act of 1990 (the act), N.J.S.A. 54:4-8.59 to -8.66. The Director has taken this position because the act requires, among other things, that the “homestead” for which the rebate is claimed must constitute the domicile of the rebate claimant.
Domicile, according to the Director, implicitly requires an unqualified intention on the part of a claimant to remain permanently or indefinitely at the place for which the rebate is claimed. Since, by university rules, on-campus housing, both for undergraduate and graduate students, is limited to specified periods of time, the Director concluded that these students, living in on-campus facilities, could not form an unqualified *647 intention to remain in the on-campus housing accommodations permanently or indefinitely. Therefore, university students living in on-campus apartments cannot qualify for homestead rebates because the apartments they occupy do not, as a matter of law, constitute “the place of [their] domicile.” N.J.S.A. 54:4— 8.58.
By letter, dated March 16,1992, plaintiff requested an official ruling from the Director as to the eligibility of students residing in on-campus apartments for the homestead property tax rebate. In response, on April 8, 1992, the Director indicated that the Division had adopted the position, for the reason previously stated, that students, both undergraduate and graduate, living in on-campus apartments were not eligible for homestead property tax rebates. Shortly thereafter, plaintiff filed a complaint in this court seeking a declaratory judgment[2] reversing the Director’s determination.
Following a telephone conference with this court, the parties submitted a stipulated statement of facts and briefs setting forth their legal positions as to those issues initially presented. Subsequently, I realized that the housing units occupied by university students were exempt from local property taxation and that this fact could significantly affect the *648 result in this case. Therefore, I arranged for a telephone conference with the parties to advise them that I was going to take judicial notice of the fact that the on-campus apartments of Rutgers University were exempt from local property taxation.[3] The parties were advised that this fact would present issues that were not framed by the parties, but constituted threshold questions that had to be answered before decisions were made on the initial issues presented. These liminal issues were: (1) whether the Homestead Property Tax Rebate Act of 1990 permits the allowance of a homestead rebate to any claimants who do not pay property taxes or rent constituting property taxes,[4] and, if so, (2) whether the constitutional provision authorizing homestead rebates, N.J. Const, art. VIII, § 1, par. 5, permitted the Legislature to enact a statute providing for homestead rebates to claimants who do not pay property taxes or rent constituting property taxes.
Plaintiff presents a number of arguments to support its position that Rutgers’ students are entitled to homestead property tax rebates even though the on-campus housing units in *649 which the students reside are exempt from local property taxation. First, plaintiff contends that there is no explicit requirement in the Homestead Property Tax Rebate Act of 1990, that a claimant “demonstrate that he or she directly or indirectly pay property tax.”
Second, plaintiff argues that even if the payment of local property taxes is an implicit requirement of the homestead property tax rebate act, that requirement is satisfied because of the “payment made by Rutgers ‘in lieu’ of property tax____” Plaintiff thus equates property taxes with “in lieu tax payments” made to taxing districts as compensation for local government costs of local services to State property pursuant to N.J.S.A. 54:4-2.2b.
Third, in the same light as its second argument, plaintiff contends that, while the university does not pay local property taxes with respect to the housing units at issue, it does pay property taxes on its non-educational property, and thus, the implicit tax-payment requirement is satisfied.
In response, the Director asserts, first, that the homestead property tax rebate act “only provides for rebates for property taxes paid by homeowners and residential tenants.” Second, the Director observes that the Legislature, even if it had the constitutional authority to do so, did not provide homestead rebates for payments in lieu of taxes. Despite the fact that the Director has not submitted a direct response to plaintiff’s third argument, the answer can be readily gleaned from the history, purpose and language of the homestead property tax rebate act and its precursors.
I.

Is the payment of local property tax an implicit requirement of the act?

Plaintiff observes, and the Director does not dispute, that there is no explicit requirement in the homestead property tax rebate act that a claimant must pay local property taxes in *650 order to be eligible for a property tax rebate. The Director maintains that that requirement is clearly inferred from the act and its legislative history.
As this court noted in Mills v. East Windsor Tp., 176 N.J.Super. 271, 1 N.J.Tax 178, 422 A.2d 819 (Tax 1980), rev’d sub nom. MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 434 A.2d 620 (App.Div.1981), aff'd o.b. per curiam, 89 N.J. 216, 445 A.2d 397 (1982), the impetus for homestead tax rebates in this State was a constitutional amendment approved by the voters at a general election on November 4, 1975. The amendment provided:
The Legislature may adopt a homestead statute which entitles homeowners, residential tenants and net lease residential tenants to a rebate or a credit of a sum of money related to property taxes paid by or allocable to them at such rates and subject to such limits as may be provided by law.
[N.J. Const, art. VIII, § 1, par. 5; emphasis added]
In light of this constitutional direction, the Legislature, in 1976, enacted the Homestead Rebate Act, N.J.S.A. 54:4-3.80 to -3.94 and the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq.
Thereafter, on November 2, 1976, the voters of this State authorized an additional amendment to the State Constitution to provide that the net receipts from any personal income tax were to be annually appropriated by the Legislature to counties, municipalities and school districts, “exclusively for the purpose of reducing or offsetting property taxes.” N.J. Const, art. VIII, § 1, par. 7.
As this court noted in Horrobin v. Taxation Div. Director, 1 N.J.Tax 213, 172 N.J.Super. 173, 411 A.2d 479 (Tax 1980), the clear intent of the framers of the two constitutional amendments was that homestead rebates would be funded by a then anticipated gross income tax to be enacted by our Legislature. 1 N.J.Tax at 218, 411 A.2d 479. This court then concluded that the overall legislative objective of the Homestead Rebate Act, linked as it was to anticipated income tax revenues, was to assure the people of this State that the then proposed income tax would be used for property tax relief and not to fund ever- *651 increasing State expenditures. Ibid.; see also Hovland v. Taxation Div. Director, 6 N.J.Tax 473, 475-76 (Tax 1984), aff'd, 204 N.J.Super. 595, 499 A.2d 1017 (App.Div.1985), certif. denied, 102 N.J. 400, 508 A.2d 258 (1986).
Once the Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., was enacted, our Legislature also provided for a credit against the tax for qualified residential tenants who were not eligible for a homestead rebate. N.J.S.A. 54A:4-3.
In reviewing the history of these homestead rebate or credit enactments in Mills v. East Windsor Tp., supra, this court appropriately noted:
This comprehensive legislative scheme makes property tax relief available on a broad scale, in the form of homestead tax rebates to homeowners, property tax reductions to residential tenants and income tax credits to residential tenants. The implication is clear from all three that property tax relief was intended for the great majority of New Jersey domiciliarles.
[ 1 N.J.Tax at 186, 422 A.2d 819; emphasis added]
Thereafter, in 1985, the Legislature enacted the Homestead Tax Relief Act, (commonly known as the Ford bill), N.J.S.A. 54A:3A-1 to -14. The essential design of this legislation was to provide “for property tax relief through the deduction of property taxes from taxable income under the New Jersey Gross Income Tax Act.” See Senate Revenue, Finance and Appropriations Committee Statement to Assembly Bill 2982 (1985). The legislative statement to the Homestead Tax Relief Act indicated that, with respect to homeowners, the legislation permitted either the deduction of the actual property taxes paid or a minimum standard deduction whichever was greater. Ibid. With respect to residential tenants, the legislation defined property taxes as the equivalent of 18% of the rent paid by the tenant and permitted the deduction of that sum as a surrogate for the actual taxes paid or a minimum standard deduction, whichever was larger. Ibid.
As this court indicated in Mills v. East Windsor Tp., supra, the overriding legislative purpose of all of the homestead rebate or credit legislation was to provide a measure of *652 property tax relief for property owners and residential tenants relative to their homesteads. See also Hovland v. Taxation Div. Director, supra, 6 N.J.Tax at 475 (“the New Jersey Constitution was amended to permit homeowners, inter alia, a rebate or credit of a sum of money related to property taxes paid by them.”) This conclusion was confirmed by the Appellate Division and the Supreme Court in Rubin v. Glaser, 166 N.J.Super. 258, 399 A.2d 984 (App.Div.1979), aff'd, 83 N.J. 299, 416 A.2d 382 (1980), app. dism., 449 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980), in which the Homestead Rebate Act was construed. In Rubin, the Appellate Division stated:
The essential purpose of the rebate plan provides, however, the best basis for interpreting the amendment. By relieving the taxed homeowner of some portion of his property tax burden, the Legislature and the electorate sought to help the homeowner keep his home. The relief was not intended to lighten the tax burdens attendant upon vacation home ownership or use, nor was it intended to aid the taxpayer in owning two or more homes. Rather, it was intended to aid the taxpayer in times of escalating property taxes to keep a roof over his head. Senior citizens many of whom were known to live on fixed incomes, and who consequently would feel the impact of rising taxes more keenly, were slated for even more relief.
[ 166 N.J.Super. at 265, 399 A.2d 984]
In affirming the Appellate Division’s conclusion that the purpose of the rebate legislation was to alleviate, in some degree, a heavy local property tax burden, our Supreme Court quoted approvingly from the Appellate Division opinion as follows:
The classification here evidences the Legislature’s attempt to blunt escalating property taxes that threaten a family’s ability to continue living in their home. We have no doubt that lessening tax burdens for that essential reason, and denying relief to less essential types of residential property ownership, is well within the Legislature’s discretion____
[ 83 N.J. at 309, 416 A.2d 382 (quoting the Appellate Division at 166 N.J.Super. at 268, 399 A.2d 984)]
The present legislation, the Homestead Property Tax Rebate Act of 1990, which both repeals and replaces the Homestead Rebate Act, the Homestead Tax Relief Act and the homestead credit for tenants in the Gross Income Tax Act, see L. 1990, c. 61, § 19, is the Legislature’s latest attempt to provide local property tax relief in the form of rebates for both homeowners *653 and residential tenants. As with the prior legislation, the overriding purpose of the current act was to provide “individual property tax relief to homeowners and residential tenants in New Jersey through a revised homestead rebate program____” See Assembly Appropriations Committee Statement to Assembly Bills 3607 and 3609 (1990).
The legislative history of the current act supports the Director’s position. Although there is no express requirement in the act that local property taxes be paid before a claimant is eligible for a homestead rebate, that intention is clearly inferred from the purpose of the rebate legislation as revealed by legislative history. “That which is implied is as much a part of the law as that which is expressed.” In re Suspension of Heller, 73 N.J. 292, 302, 374 A.2d 1191 (1977) (quoting from Ward v. Scott, 11 N.J. 117, 123, 93 A.2d 385 (1952)).
The public concern which gave rise to the constitutional amendments previously noted and the implementing homestead rebate legislation was to provide property tax relief to those property taxpayers who were becoming overburdened by the continually escalating property tax. To provide property tax rebates to those who neither pay property taxes nor pay rent which is used in part to pay property taxes clearly does not further the essential purpose of the property tax rebate legislation but, on the contrary, runs counter to the stated purpose and legislative scheme.
In Mills v. East Windsor Tp., supra, this court observed that:
[L]ocal budgets are funded by revenues raised by the imposition of the requisite tax rate upon an existing ratable base. When the ratable base is reduced by virtue of the exemption of the property from taxation, the local tax rate must be increased so that the same amount of revenue will be raised from those properties that remain taxable. Exemption of any property from taxation in this context necessarily results in increased taxation for all other properties.
[ 1 N.J.Tax at 184, 422 A.2d 819]
As a consequence, the exemption of the on-campus housing units from local property taxation in this case results in an increase in the property tax rate to be applied to those nonex *654 empt properties. Recognizing this, the Director maintains that it is inconceivable that either the voters of this State or the Legislature intended to provide property tax rebates to those, who were not only exempt from local property tax but, whose exemption resulted in higher property taxes for those required to pay such taxes. The history and purpose of the current act clearly support the Director’s position.
Next, the Director points out that the language of the homestead property tax rebate act also supports the conclusion that there is an implicit, but obvious, requirement that payment of property taxes is a condition precedent to a homestead property tax rebate.
To begin with, the title of the act, the Homestead Property Tax Rebate Act of 1990, is indicative of the Legislature’s intent to limit the scope of the act to payments of rebates to reduce the burden of property taxes. See Trustees of Local 478 Pension Fund v. Pirozzi, 198 N.J.Super. 297, 312, 486 A.2d 1288 (Law Div.1983); aff'd o.b. per curiam, 198 N.J.Super. 318, 486 A.2d 1299 (App.Div.1984) (the title of a statute is indicative of its scope as well as the legislative intent); see also Samuel D. Wasserman, Inc. v. Klahre, 24 N.J.Super. 143, 147, 93 A.2d 628 (App.Div.1952) (declaring that statute’s title is relevant to its construction). After all, one cannot obtain a rebate of property tax unless there is an obligation to pay property tax or property tax is paid.[5]
More important, however, is the language employed in the act itself. As the Director readily points out, the act only provides a rebate when property tax is paid. For example, N.J.S.A. 54:4-8.59a. provides for a minimum rebate in the following terms:
[A] resident of this State shall be allowed:
*655 (1) a minimum rebate of $150 for property taxes paid on one homestead for the tax year if the claimant’s gross income does not exceed $70,000 for that year; or
(2) a minimum rebate of $100 for property taxes paid on one homestead for the tax year if the claimant’s gross income exceeds $70,000 but does not exceed $100,000 for that year.
[Emphasis added]
With respect to homeowners seeking rebates in excess of the minimum, that act provides that:
a resident of this State shall be allowed a rebate for the tax year equal to the amount by which property taxes paid by the claimant in that tax year on the claimant’s homestead exceed 5% of the claimant’s gross income, up to a maximum rebate of $500____
[N.J.S.A. 54:4-8.59b.; emphasis added]
N.J.S.A. 54:4-8.59e states:
If the homestead of a claimant is a residential property consisting of more than one unit, that claimant shall be allowed a rebate pursuant to this section only in relation to the proportionate share of the property taxes assessed and levied against the residential unit occupied by that claimant, as determined by the local tax assessor.
[Emphasis added]
With respect to residential tenants the act provides for a minimum rebate as follows:
[A] resident of this State whose homestead is a unit of residential rental property shall be allowed:
(1) a minimum rebate of $65 for property taxes paid through rent on the homestead for the tax year if the claimant’s gross income does not exceed $70,000 for that year; or
(2) a minimum rebate of $35 for property taxes paid through rent on the homestead for the tax year if the claimant’s gross income exceeds $70,000 but does not exceed $100,000 for that year.
[N.J.S.A. 54:4-8.60a.; emphasis added]
Residential tenants can obtain homestead rebates in excess of the minimum if their rental payments constituting property taxes in the tax year exceed 5% of their gross income up to a maximum rebate of $500. N.J.S.A. 54:4-8.60b. The act defines “rent constituting property taxes” as “18% of the rent paid by *656 the claimant during the tax year on a unit of residential rental property which constitutes the claimant’s homestead.” N.J.S.A. 54:4-8.58.
These provisions, which refer to the payment of local property taxes, clearly demonstrate the legislative intent to limit the rebate provisions to those who either directly pay local property taxes or pay local property taxes indirectly through rental payments.
Plaintiff attempts to demonstrate that the Legislature did not intend to require the actual payment of property taxes with respect to residential tenants because the act assumes that 18% of a tenant’s rental payments constitute property taxes. Apparently, the argument is that the Legislature did not implicitly require the indirect payment of local property taxes, but only that rent payments be made in order to qualify one for a homestead rebate. The argument is not convincing.
To begin with, if the Legislature had intended to condition the payment of a rebate solely on the payment of rent, whether or not a portion of that rent was to ultimately satisfy local property tax obligations, it need not have defined the requirement as “rent constituting property taxes.” Instead it could have simply provided that the rebate to be given a residential tenant would be measured by a percentage of the rent paid by the tenant. A reference to property taxes need not have been made.
To the contrary, however, the Legislature defined “rent constituting property taxes” in recognition of the fact that rent levels for qualified residential tenants anticipate the local property tax burden on the rental property. Compare Cold Indian Springs Corp. v. Ocean Tp., 81 N.J. 502, 507-08, 410 A.2d 652 (1980) in which our Supreme Court reviewed the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq. As then Governor Cahill noted, in 1972, speaking of tax relief for tenants, “there is no escape from the obvious fact that a substantial portion of rent is, in reality, the tenant’s share of property taxes passed on to him by the landlord property *657 owner.” N.J. Governor, A Master Plan For Tax Reform (Cahill, 1970-1974) (material available at New Jersey State Law Library).
The basis for the selection of 18% as that percentage of rent attributable to local property taxes had its genesis in the Report of the New Jersey Tax Policy Committee (Part II, The Property Tax) (February 23, 1972). The Tax Policy Committee observed that residential tenants spend approximately 20%-25% of their income for housing and that approximately 20% to 25% of that amount is attributable to property tax. Id. at 44. The committee recommended that residential tenants be included in a then proposed tax abatement program and further that 25% of the rent paid be considered as property tax. Id. at 45.
In the now repealed Homestead Tax Relief Act, L. 1985, c. 304, § 2, effective August 25, 1985, the Legislature adopted 18% of the rent paid by a residential tenant as that portion of the rent attributable to property taxes. That percentage determination was repeated in the current homestead property tax rebate act.
The selection of a specified percentage by the Legislature serves two legitimate purposes. First, while there is reason to believe that the amount of rent attributable to property tax varies somewhat, the selected percentage approximates, in most instances, the amount of rent that goes for property taxes. Second, it provides administrative convenience and certainty in the calculation of homestead rebates for residential tenants. The purpose for the provision of the amount of rent attributable to property taxes was clearly not, as plaintiff suggests, to provide homestead rebates for residential tenants who do not indirectly pay local property taxes.
Plaintiff maintains, however, that there is a provision in the homestead property tax rebate act that clearly demonstrates that the Legislature did not intend to limit homestead rebates to those homesteads for which local property taxes were paid. Specifically, plaintiff notes that subsection c. of the definition of “residential rental property,” N.J.S.A. 54:4-8.58, includes “any *658 building or structure ... constructed under the following sections of the National Housing Act____” See 12 U.S.C.A. § 1701 et seq. Plaintiff then argues that, since these are housing units that are under the direct supervision and control of the federal government, they are “presumably property ... which the municipality is powerless to assess a local property tax.” Plaintiff concludes its argument by stating that, inasmuch as the Legislature provided for homestead rebates for housing units for which property taxes could not be assessed or paid, the Legislature must have intended to provide homestead rebates even when claimants had not paid local property taxes either directly or indirectly through rental payments.
Plaintiffs assertion as to property constructed under the National Housing Act is just plain wrong. The National Housing Act specifically permits local property assessment and taxation of properties held by the federal housing commissioner under the relevant sections of the National Housing Act. See 12 U.S.C.A. §§ 1706b, 1714, 1741 and 1747j and Byran Holding Co. v. Bogren, 2 N.J.Super. 331, 335, 2 N.J.Super. 331 (Ch.Div.1949). Thus, the premise for plaintiffs submitted conclusion is clearly wrong.
In the same vein, plaintiff also asserts that if Rutgers’ students are denied rebates, so also, should members of the clergy who rent tax-exempt property be denied rebates, as well as, other employees of the university who rent tax-exempt university property and any claimants who rent any housing units owned by federal, state or local governments. This assertion does not assist in determining whether the Legislature intended to provide for homestead tax rebates to those claimants that had not paid local property taxes or rent constituting property taxes, because it presents the very issue that this court must decide in this case. Moreover, there is no proof, in this case, that homestead rebates are, in fact, being paid to claimants who have not paid local property taxes either directly or indirectly through rental payments.
*659 In further support of the proposition that payment of local property taxes, either directly or indirectly, is an implicit requirement for a homestead rebate is the Director’s interpretation of the homestead property tax rebate act. The Director’s position was made known in a question-and-answer booklet prepared by the Division of Taxation specifically for use with respect to the Homestead Property Tax Rebate Act of 1990. N.J. Division of Taxation, New Jersey Homestead Property Tax Rebate, Questions and Answers (1991). The questions and answers clearly reveal that, in the Director’s view, eligibility for the homestead property tax rebate was tied to both payment of property taxes, either directly or indirectly through rent, and income.[6]
 Generally, the courts in this State give substantial deference to the interpretation of a statute by an administrative agency when that agency is charged with enforcing that very statute. Smith v. Director, Div. of Taxation, 108 N.J. 19, 25-26, 527 A.2d 843 (1987). Moreover, “the agency’s interpretation of the operative law is entitled to prevail, as long as it is not plainly unreasonable.” Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984). In light of the relevant legislative history of, and language employed in, the Homestead Property Tax Rebate Act of 1990, I find the Director’s interpretation to be readily inferable and manifestly reasonable. The payment of local property tax is an implicit requirement of the act.
II.

Are “in lieu tax payments” the functional equivalent of property taxes?

Plaintiff maintains that, if the direct or indirect payment of property tax is an implicit requirement for a homestead rebate, then Rutgers’ students residing in on-campus apart- *660 merits meet the requirement because “Rutgers pays a tax in lieu of property taxes.” According to plaintiff, it may not be called a property tax but it is the functional equivalent of the property tax since the “in lieu payments” are based on the assessed value of the housing units at issue and are provided to the municipality for the support of the local government. Additionally, plaintiff asserts that, since the purpose of the rebate legislation was to provide financial relief for all persons who either directly or indirectly shoulder the costs of local government, the in lieu payments are no different than property taxes. Plaintiff concludes that, by making in lieu tax payments, Rutgers incurs a financial burden, and consequently, Rutgers’ students, living in on-campus apartments, are eligible for homestead property tax rebates.
In response, the Director maintains that the homestead property tax rebate act only provides a rebate when property tax, as that term is commonly understood, is paid. Words in a statute are to be given their ordinary and primary meaning, unless there is an explicit indication of a special meaning to be attached to the words. See N.J.A.C. 1:1-1 and Service Armament Co. v. Hyland, 70 N.J. 550, 556, 362 A.2d 13 (1976). Neither of the parties may give a statute any greater effect than its language allows. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964).
Contrary to plaintiff’s assertions, the Director contends that “property taxes” and “in lieu tax payments” are vastly different and the term “property taxes,” as employed in the act and as commonly understood, does not refer to payments in lieu of taxes. There is no statutory definition of the term property tax, but the Director has provided the commonly accepted meaning of property tax in her annual report.
The property tax is a local tax assessed and collected by municipalities for the support of municipal and county governments and local school districts. No part of it is used for support of State Government[7]
*661 The amount of local property tax is determined each year, in each municipality, to supply whatever revenue is required to meet budgeted expenditures not covered by monies available from all other sources. School districts and counties notify municipalities of their property tax requirements. Municipalities add their own requirements and levy taxes to raise the entire amount.
[State of New Jersey, Annual Report of the Division of Taxation (1991) at 82]
The on-campus housing units implicated in this proceeding are exempt from local property taxation. Hence, property taxes, as commonly understood, are not paid to the municipality in which the apartments are located. See Rutgers v. Piscataway Tp., 1 N.J.Tax 164 (Tax 1980). Instead, payments in lieu of taxes are made “to compensate municipalities for the impact upon local government costs of local services to State property____” N.J.S.A. 54:4-2.2b. In order to obtain in lieu of tax payments for a municipality, the tax assessor files a statement with the Director of the Division of Taxation listing State-owned exempt property situated in the municipality together with the assessed values. N.J.S.A. 54:4-2.2c. The Director reviews the list and makes any necessary revisions. N.J.S.A. 54:4-2.2d. Any determinations made by the Director are final and are not subject to appeal except to correct typographical and mathematical errors. Ibid.
The Director computes the State’s in lieu of property tax payments by multiplying the aggregate assessed value of eligible State-owned property located in the municipality by the effective local purpose tax rate of the municipality. N.J.S.A. 54:4-2.2e. There are, however, two limitations. The first is that the State has no liability for any in lieu of tax payment when the total amount owed by the State to a municipality is less than $1,000. N.J.S.A. 54:4-2.2e. Second, the in lieu payment to any municipality may not exceed 35% of that municipality’s local purpose tax levy. Ibid.
Once the Director calculates and certifies the amount necessary for the State’s in lieu of tax payments, N.J.S.A. 54:4-2.21, the State Treasurer includes the necessary funds in his budget request for State aid to municipalities. N.J.S.A. 54:4-2.2g. In the event, however, that the appropriation for any year is less *662 than the amount required for the full payment in lieu of taxes to each municipality, the amount payable to each municipality must be proportionately reduced. N.J.S.A. 54:4-2.2j.
As the Director has observed, there is little question but that payments in lieu of taxes are dramatically different from local property taxes. To begin with, local property taxes are required to fund not only the cost of local municipal government, but also the cost of county government and the municipal share of the cost of local school districts. In contrast, the in lieu of tax payments are designed to compensate municipalities for one small portion of the total municipal tax burden, that of the cost of local services provided to State property. The difference is striking. For example, in Piscataway Township, for 1992, the local property tax rate was $2.66. Of that amount only $.387 was required to support the local purpose or municipal budget. The balance of $2,273 was necessary to support county government and the school district.
Stated another way, $.387 or 14.6% of Piscataway’s total 1992 tax rate of $2.66 was required for local government costs, while $1,678 or 63% was required to support the local school district and $.595 or 22.4% was required to fund the cost of county government.
As can readily be seen, the maximum in lieu of tax payment can only be 35%[8] of 14.6% of Piscataway’s total 1992 tax rate. Hardly comparable to local property tax payments. The vast difference is graphically shown in the tables published by the Director of the Division of Taxation on State payments for local services in lieu of taxes. Again, using Piscataway Township as an example, the July 5, 1992 table reveals that Piscataway had State property with an aggregate assessable value located within its borders of $503,530,400 that produced a semi-annual *663 payment to Piscataway of $312,032.23 or an annual sum of $624,064.46. If the State-owned property were fully taxable and Piscataway’s tax rate remained at $2.66, the property taxes that would be derived would approximate $13,393,908.64 (total assessed value of State owned property of $503,530,400 multiplied by Piscataway’s 1992 tax rate of $2.66 per $100 of assessed valuation).[9]
The Director persuasively argues that the concern of our Legislature, in its adoption of the current homestead property tax rebate act and the prior rebate and credit legislation, was to provide property tax relief. Payments in lieu of taxes are clearly not the equivalent of property taxes and do not come within the purpose or intent of the current act as evidenced by legislative history and the specific language employed by the Legislature in the act. If the Legislature had intended to include payments in lieu of taxes within the concept of property taxes, it could have easily so provided. Simply stated, “property taxes” and “in lieu payments” are neither nominally nor functionally the same. Absent some indiction that the Legislature equated the two clearly different terms, I am not at liberty to intrude into an area reserved exclusively to the Legislature by rewriting the statute.
Moreover, as the Director also points out, Rutgers does not make the payments in lieu of taxes to the affected municipalities. Rather, it is the State which makes the payment directly to the municipalities in which eligible State property is located. See Rutgers v. Piscataway Tp., supra, 1 N.J.Tax at 166, 168 (“In [N.J.S.A. 54:4-2.2a et seq.,] the Legislature provided that for 1978 and thereafter the State would make direct payments in lieu of tax to municipalities in which certain State property is *664 located,” id. at 166). The significance of the direct payments by the State is that the operating budget of Rutgers is not affected by the in lieu of tax payments made by the State, and thus, the rental payments made by Rutgers students are not in anyway allocable to in lieu of tax payments, even if, such payments were considered to be the functional equivalent of property taxes.
III.

Does the payment of property taxes on non-educational property satisfy the rebate act?

Plaintiff maintains that Rutgers does pay local property taxes on its non-educational property which property is for the benefit of its students, and thus, that cost is passed on to Rutgers’ students in the form of rents charged those students living in on-campus apartments. According to plaintiff, these property taxes are allocable to the students living in on-campus apartments, and therefore, those students meet the implicit requirements of the homestead property tax rebate act.
This assertion reflects a clear misunderstanding of the homestead property tax rebate act. The Legislature did not intend the rebate to offset any and all local property taxes, but only those taxes that were attributable to one’s “homestead,” i.e., that place that constitutes the claimant’s domicile and is used by the claimant as the claimant’s principal residence. N.J.S.A. 54:4-8.58. Both the Appellate Division and the Supreme Court made this point perfectly obvious in Rubin v. Glaser, supra, when both courts observed that the property tax relief envisioned in the Homestead Rebate Act, N.J.S.A. 54:4-3.80 et seq. was to limit the tax benefits to those taxed homes that constituted the principal residences of the claimants. 166 N.J.Super. at 265, 399 A.2d 984; 83 N.J. at 307, 416 A.2d 382. The rebate was not intended to lighten the tax burdens incurred on vacation homes, nor was it intended to aid a taxpayer in owning two or more homes. Rather, it was intended to aid the *665 taxpayer’s burden with respect to property taxes on a principal residence in times of escalating property taxes. Ibid.
Moreover, the local property taxes paid by Rutgers are not, as plaintiff contends, passed on to just those students who are living in on-campus apartments in the form of rents charged. Instead, these costs are part of Rutgers’ operating budget which are shared by all students in the form of tuition costs. Those property taxes are not allocable specifically to those students living in on-campus apartments.
In sum, the legislative history, language and purpose of the Homestead Property Tax Rebate Act of 1990 implicitly make the payment of local property tax an eligibility requirement for homestead property tax rebates. Second, the ordinary and primary meaning of the term “property tax” does not include “payments in lieu of taxes.” Third, the property tax payments that are implicitly, but obviously, required in the rebate act, relate to the taxes on one’s principal residence, not any and all property taxes that may be paid.
IV.

Does an implicit requirement that property taxes be paid deny students equal protection of the law?

Neither party has either presented or briefed the issue of whether limiting homestead property tax rebates to those claimants that have paid local property taxes denies equal protection of the laws to those who have not paid, either directly or indirectly, local property taxes. That is understandable since the legal analyses presented in the opinions of the Appellate Division and Supreme Court in Rubin v. Glaser, supra, relative to an equal protection claim have the same relevance and force when applied to the facts of this case. Since the homestead rebate act implicates an economic right and not a suspect classification or a fundamental right, the appropriate constitutional test is whether the act has a reasonable relation to a proper legislative purpose. See San Antonio *666 Independent School Dist. v. Rodriquez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Rubin v. Glaser, supra, both in the Appellate Division and the Supreme Court has already provided the answer. Hence, for the reasons and constitutional principles expressed in those opinions, I conclude that limiting the homestead rebate to only those who have paid local property taxes does not impinge upon any constitutional rights of Rutgers’ students with respect to equal protection of the laws.
V.

Conclusion.

Since I have determined that the students residing in on-campus housing units at Rutgers University do not qualify for homestead property tax rebates, albeit for a different reason than originally advanced by the Director, the Director’s determination will be affirmed.
This determination renders it unnecessary to address a number of issues raised by the briefs of the parties including, but not limited to, the questions of: (1) whether the constitutional amendment at N.J. Const, art. VIII, § 1, par. 5. permits the Legislature to enact a homestead rebate statute unrelated to property taxes, (2) even if the constitutional amendment does not, by its terms, permit the Legislature to adopt a homestead rebate statute unrelated to property taxes, does the Legislature still have the authority to so enact such a statute, (3) is residence in this State, alone, sufficient to render one eligible for a homestead property tax rebate or must one be domiciled in the homestead for which the rebate is claimed, (4) if domicile is required, does the term require a claimant to form “an unqualified intention to remain permanently or indefinitely” in a specific apartment or dwelling, and (5) whether the students living in on-campus facilities meet the “principal residence” requirement of the homestead property tax rebate act.
Judgment will be entered affirming the determination of the Director of the Division of Taxation.

 RULAC is a nonprofit corporation whose purpose is to represent and advance the interests of students at Rutgers University.

 This action was not instituted pursuant to the authority in N.J.S.A. 54:4-8.66. That statutory provision is limited to claimants who are aggrieved by the denial of a rebate claim by the Director. In this case plaintiff is not an aggrieved claimant within the meaning of the homestead property tax rebate act. Instead, plaintiff seeks a ruling of this court regarding the correct construction of the eligibility requirements of the rebate act pursuant to N.J.S.A. 2A:16-53 of the uniform declaratory judgments law.
This court has jurisdiction to entertain the present declaratory judgment action because plaintiffs complaint seeks review of an action, ruling or decision of the Director of the Division of Taxation with respect to the Homestead Property Tax Rebate Act of 1990, N.J.S.A. 54:4-8.57. See N.J.S.A. 2A:3A-4.1; N.J.S.A. 2A:16-52; Am. Trucking Ass'n v. Kline, 8 N.J.Tax 181, 191 (Tax 1986), aff'd, 9 N.J. 631 (App.Div.1987); Exxon Corp. v. East Brunswick Tp., 192 N.J.Super. 329, 337, 470 A.2d 5 (App.Div.1983), certif. denied, 96 N.J. 312, 475 A.2d 601 (1984) (The Tax Court has jurisdiction to review whether a regulation of the Director of the Division of Taxation was properly adopted and within the Director’s authority); R. 8:2(a).

 To insure that my conclusion that the on-campus housing at issue was indeed exempt from local property taxation was correct, the parties were advised to verify that fact with the appropriate authorities. None of the briefs submitted by the parties disputes or challenges that conclusion in any manner.

 Plaintiff, after having an adequate opportunity to brief the issues and present any additional facts bearing on the issues, claims that these issues should not be considered by this court because the Director failed to raise these issues in her initial determination. Plaintiffs claim is completely unjustified. First, it was this court, not the Director, who, in the interest of justice, expanded the issues in this case. See Ross Systems v. Linden Dari-Delite, Inc., 62 N.J.Super. 439, 447, 163 A.2d 184 (App.Div.1960), aff’d in part, rev'd in part, 35 N.J. 329, 173 A.2d 258 (1961) and Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J.Super. 485, 494-95, 189 A.2d 448 (App.Div.1963), certif. denied, 40 N.J. 226, 191 A.2d 63 (1963). Second, as the Director observes, plaintiff has not claimed nor shown any prejudice. See Middlesex Water Co. v. Taxation Div. Director, 3 N.J.Tax 233, 251-54, 181 N.J.Super. 338, 437 A.2d 368 (Tax 1981). As a matter of fact, plaintiff did not object to the injection of the additional issues at the time of the telephone conference. It raises the objection for the first time in its brief and appears to be nothing more than an afterthought. Third, plaintiff presents no authority to support its position.

 According to The American Heritage Dictionary (2d Coll Ed.1982), a rebate is "[a] deduction from an amount to be paid or a return of part of an amount given in payment.” Id. at 1031. Hence to rebate all or any portion of a property tax payment, the payment of property tax, of necessity, is required.

 The Director’s position was also revealed in 20 New Jersey State Tax News (March—-April 1991) at 31-33.

 Plaintiff cannot quarrel with this definition of "property tax” since it has employed an identical definition in its brief.

 The figure of 35% assumes, of course, that the State will appropriate the maximum amount permitted by N.J.S.A. 54:4-2.2e. If the State appropriation for in lieu payments for local services to State property is less than the amount required for full funding then the amount payable to each municipality is proportionately reduced. N.J.S.A. 54:4-2.2j.

 This example is merely used to graphically demonstrate the difference between the calculation for local property taxes and payments in lieu of taxes. Of course, if the State were to pay full taxes instead of making payments in lieu of taxes, the fact that State owned property would become part of the tax base would have the effect of lowering the total tax rate and, in turn, the actual amount to be paid by the State. The amount to be paid, however, would still be substantially greater than the payments in lieu of taxes.