743 A.2d 864 (2000)
327 N.J. Super. 414
Eileen NOBREGA, Frank and Anna Scalise, Salvatore Apuzzio, Jr., Doris and Kwong Au, Samuel Baskinger, Bonnie Bertucci, Bruce and Rachel Binkowitz, William Bluestone, Yvonne Brix, Patricia Bush, Roland and Betty Chang, Jim and Chuen Chu, Alicja Ciobanu and Paul Szott, Cornell and Fran Coco, Dan and Connie Colon, Rose Mary Corrales, Alan and Barbara Coscarelli, Scott and Christy Davis, Elaine DeLorenzo, Diane Digiulio, Arlene and Barry Fink, Steven and Kathleen Fuschetti, Elizabeth Gomez, Worseley and ULA Greenidge, Harry Griefer, Michael and Teresa Hammalak, Andre and Meritta Herscovici, Marilyn and George Higgins, Linda Ionta, Stephen E. and Amy S. Kane, Arlene Kaplan, Irwin, Barry and Muriel Keshner, Carolyn B. Kilponen, Bill and Terry Koncar, Frank Kowalewski, Albert and Jean Kuchinskas, Theresa Leonardis, John and Phyllis Maffucci, Joseph and Celia Mandel, Nathan and Molly Marko, Esther Mullaly, Teresa O'Hara, Leonard Olen, Victoria Montanino Ortiz, Oscar and Lois Pannella, Audrey Press, Susan Puhan, Donna Rando, Yves Roc, Scott Rosmarin, Kenneth G. Sable, Mark And Mirta Smolar, Zaida and Angel Sotolongo, Kathryn Stanco, Stewart Thompson, Vincent and Carolyn Varca, Andrew and Carolyn Vittoria, Larry and Arleen Weisenstein, Dana Zaifert and Edward Zimmerman, Plaintiffs-Appellants,
v.
EDISON GLEN ASSOCIATES, a New Jersey Partnership, Arie Halpern, David Halpern, Fred Halpern, Jack Halpern, Murray Halpern, Sam Halpern, Josef Paradis, Henry Stein, Estate of Harry Wilf, Joseph Wilf, Eric Rosenbaum, and Paul Visser, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1999.
Decided January 21, 2000.
*866 Dennis A. Estis, Woodbridge, for plaintiffs-appellants (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Mr. Estis, of counsel and on the brief; Jessica R. Mayer, on the brief).
Frederick B. Polak, Roseland, for defendants-respondents (Post, Polak, Goodsell & MacNeill, attorneys; Mr. Polak, of counsel; Christopher O. Eriksen, on the brief).
John J. Farmer, Jr., Attorney General, filed a letter memorandum at the request of the court (Eileen P. Kelly, Deputy Attorney General, on the letter memorandum).
Before Judges PRESSLER, LANDAU and CIANCIA.
*865 The opinion of the court was delivered by PRESSLER, P.J.A.D.
In Strawn v. Canuso, 140 N.J. 43, 657 A.2d 420 (1995), the Supreme Court imposed upon residential developers and their agents the obligation, both as a matter of common-law duty and under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, to disclose to prospective purchasers of new residential construction those adverse off-site conditions known to them but not readily observable to buyers that materially affect the subject of the sale. In response to Strawn and less than five months after the opinion was issued, the Legislature adopted the New Residential Construction Off-Site Conditions Disclosure Act, N.J.S.A. 46:3C-1 to -12 (Disclosure Act), which severely limits the scope of the disclosure obligation and applies those limitations retroactively to all real estate transactions consummated before its effective date except those in which a claim of actionable non-disclosure was made prior to the date Strawn was decided. The Disclosure Act, however, expressly excepts from its reach the obligation to make those disclosures respecting off-site conditions that are imposed by the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56; the Air Safety and Zoning Act of 1983, N.J.S.A. 6:1-80 to -88; and "any other statutory provision." N.J.S.A. 46:3C-10d. The primary issue before us is whether "any other statutory provision" includes the provisions of section 2 of the Consumer Fraud Act, N.J.S.A. 56:8-2. Since we conclude that it does and hence that the Disclosure Act preserves intact the rights of real estate purchasers afforded by the Consumer Fraud Act, we need not decide in this action whether the retroactivity provision of the Disclosure Act passes constitutional muster.
Because this action was dismissed on the basis of a motion made under R. 4:6-2(e) (failure to state a claim upon which relief can be granted), only minimally converted into a summary judgment action under R. *867 4:46-2 by the submission of certifications, and since no discovery had ever been apparently engaged in, much of the factual background has remained undeveloped. The facts, as they come before us, viewed indulgently to plaintiffs, see, e.g., Printing Mart-Morristown v. Sharp Electronics, Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), may, therefore, be briefly stated. Plaintiffs are the purchasers of condominium units in a condominium project in Edison, New Jersey, known as Edison Glen Terrace and developed and sponsored by defendant Edison Glen Associates, a New Jersey partnership. The individually named defendants are the partners or the estates of deceased partners. The plaintiffs bought their respective units directly from the developer-sponsor between 1987 and 1991, the bulk of the sixty units here in issue having been purchased between 1987 and 1989.
The condominium property is located in close proximity, namely, within two miles, of two sites contaminated by hazardous substances and, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C.A. § 9601 to 9675, listed by the United States Environmental Protection Agency (EPA) on the National Priority List for cleanup, rendering them so-called Superfund sites. The first, a site formerly used by Renora, Inc., was placed on the Superfund list in 1982, prior to the construction of the condominium project, as the result of EPA's determination that its storage containers for hazardous waste had deteriorated, permitting the discharge of lethal toxins into the soil and groundwater. The second site, owned by Chemical Insecticide Corporation, was placed on the Superfund list in 1990, after EPA determined that arsenic and other hazardous substances used in its manufacturing processes had leached into the soil and groundwater as a result of its illegal dumping of these materials on the property.
Plaintiff Eileen Nobrega, the purchaser of one of the units and the president of the condominium association, asserted that sometime in 1992 or 1993, she first began to hear rumors of contamination on the nearby industrial sites. She further asserted that sometime in 1993 or 1994, she had information that some of the unit owners who wished to sell were experiencing untoward difficulties in doing so. At about that time, she claims, not only had the resale of units come "to a virtual halt," but also defendants had removed the remaining unsold units, about one hundred, from the sales market, resorting to the strategy of reserving them for rental to transients. The damages claim is based on the substantial depreciating effect on the value of the condominium units resulting from the proximity of the two Superfund sites, a depreciation estimated by their appraiser as an average of forty percent of what the market value should reasonably have been. After futile discussions and negotiations with defendants, plaintiffs finally consulted counsel, and this complaint was filed in May 1997.
The gravamen of the complaint is simply that defendants knew of the existence of the two Superfund sites, that plaintiffs did not, and that defendants owed them the duty of disclosure of that material fact before they bought their respective units. Five of the six counts of their initial complaint were based on apparent common-law causes of fraud and misrepresentation variously pleaded. The remaining count pleaded a cause of action under the Consumer Fraud Act, alleging that "[t]he Defendants have employed unconscionable commercial practices and/or fraud or other unlawful acts in connection with the sale and/or advertising of the units at the Condominium in violation" of the Act.
Defendants' motion to dismiss on the pleadings was based on their assertion that under the Disclosure Act, they were immunized, and retroactively so, from all liability for non-disclosure of hazardous off-site conditions. They relied on the *868 scheme of the Disclosure Act, which is to require persons who own, lease or maintain a potentially dangerous off-site condition as enumerated by the Act[1] to provide the municipal clerk of each municipality in which such a condition exists a list of those conditions and their location on a form to be adopted by the Commissioner of Community Affairs by September 1996, i.e., within one year after the effective date of the Act, and to update the list as of August 31 of each succeeding year. N.J.S.A. 46:3C-5. In addition, the Commissioner of Environmental Protection is required to provide the municipal clerks with lists of such off-site conditions that are within its jurisdiction and within the same time periods. N.J.S.A. 46:3C-6. The sole obligation of the seller of new residential construction is to provide the prospective purchaser with a notice, in a statutorily prescribed formulation, of the availability of lists of off-site conditions in the municipal clerk's office and the buyer's right to cancel the contract within five days after its execution. N.J.S.A. 46:3C-8 and -9. The seller is, moreover, completely immunized from liability for non-disclosure provided the statutory notice is given notwithstanding the fact that the lists have not yet been compiled by the municipal clerk, the municipal clerk has not yet received the lists or made them available, or there is any error or omission in the list. N.J.S.A. 46:3C-10a. Finally, N.J.S.A. 46:3C-10c contains the retroactivity provision we have referred to, and N.J.S.A. 46:3C-10d contains the exception for the other statutes to which we have also referred.
Although the trial judge agreed with defendants that the Disclosure Act effectively barred the plaintiffs' common-law claims, he was initially of the view that the consumer fraud claims survived. He reversed himself, however, on defendants' motion for reconsideration, concluding that not having been specifically referred to by N.J.S.A. 46:3B-10d, the Disclosure Act was intended to override the Consumer Fraud Act. Plaintiffs appeal. We reverse.
We recognize that an ambiguity respecting the Disclosure Act's intended scope may result from the verbiage of N.J.S.A. 46:3C-10d, which provides in full that:
The provisions of P.L.1995, c. 253 (C.46:3C-1 et seq.) shall not be interpreted to affect the disclosure requirements for conditions off-site contained in "The Planned Real Estate Development Full Disclosure Act," P.L.1977, c. 419 (C. 45:22A-21 et seq.), the "Air Safety and Zoning Act of 1983," P.L.1983, c. 260 (C.6:1-80 et seq.) or in any other statutory provision.
That is to say, while the Planned Real Estate Development Full Disclosure Act and the Air Safety and Zoning Act are specifically excepted, the general exception for "any other statutory provision" may be subject to interpretation. In construing that phrase, we note first that within the framework of the statutory provision as a whole, the text may be restated, as was obviously intended by the Legislature, to read "any other statutory provision requiring disclosure of off-site conditions." And, as we discuss hereafter, Strawn leaves no doubt that the Consumer Fraud Act, N.J.S.A. 56:8-2, is such a provision. On its face, then, it would clearly appear that the Consumer Fraud Act is within the exception accorded other statutory provisions imposing off-site disclosure obligations. We are convinced, moreover, that this facial appearance is exactly what the Legislature meant.
We base this conclusion not only on a parsing of the statutory section and both legal precedent and public policy considerations *869 we discuss hereafter, but also, and primarily, on the clear and unequivocal Statement of Governor Christine Todd Whitman in signing the bill that became the Disclosure Act. After noting that the purpose of the Act was to balance "the need for consumers to know of the existence of off-site conditions and the need for sellers to know the extent of their duty to disclose," the Governor states that "[m]ost important, the bill accomplishes this, I am assured by both sponsors and all interested parties, without interfering with any remedies that may be available in appropriate cases to prospective buyers under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., or any other relevant statute. Based on these assurances, I have signed the bill." This overriding theme of preservation of remedies afforded under the Consumer Fraud Act is reiterated by the News Release issued by the Office of the Governor on September 18, 1995, which reviews several pieces of legislation she either signed or vetoed on that date. In a short statement referring to the Disclosure Act, signed that day by the Governor, the News Release explains that "[i]n a statement of intent, Governor Whitman said that the bill does not interfere with any remedies available to prospective buyers under the Consumer Fraud Act."
In our view, nothing could be plainer or more unequivocal as an exposition of legislative intent as understood by the Chief Executive and as accepted by her in signing the bill into law. And we rely on the Governor's Statement and the News Release issued by her office first because such statements are customarily viewed as legislative history appropriately considered by the court in informing its statutory construction. See, e.g., Smith v. Whitaker, 160 N.J. 221, 245, 734 A.2d 243 (1999); State v. Eisenman, 153 N.J. 462, 473, 710 A.2d 441 (1998); Cornblatt v. Barow, 153 N.J. 218, 235, 708 A.2d 401 (1998); State v. Brimage, 153 N.J. 1, 8, 706 A.2d 1096 (1998). But we also rely on it because the Governor's understanding of the Disclosure Act as preserving home buyers' remedies under the Consumer Fraud Act is consistent with this State's long-standing public policy of affording consumers protection from unconscionable commercial practices, with the extension of those protections to buyers of new residential construction as part of the continuing and enlightened recognition of the unjust consequences of the archaic doctrine of caveat emptor as applied to real estate transactions, and with this State's strong commitment to environmental safety and its affording of redress to those who innocently suffer both personal and economic loss as the result of environmental pollution.
It is readily demonstrable that these threads have been firmly woven into the fabric of the economic and social consciousness and expectations of the community by both the Legislature and the courts. The courts have made it clear that as a matter of justice and fair dealing, the buyers of new homes are entitled to the benefit of an implied and far-reaching warranty of habitability, see McDonald v. Mianecki, 79 N.J. 275, 398 A.2d 1283 (1979); Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314 (1965), and that sellers who have knowledge of on-site conditions adversely affecting value have the duty of disclosure thereof, Weintraub v. Krobatsch, 64 N.J. 445, 317 A.2d 68 (1974), and that sellers are liable for making direct and affirmative misrepresentations regarding such off-site conditions, Curtiss-Warner Corp. v. Thirkettle, 101 N.J. Eq. 279, 137 A. 408 (E. & A.1927). The Legislature, nearly a quarter of a century ago, significantly and dramatically advanced the legitimate interests of home purchasers by amending N.J.S.A. 56:8-2 of the Consumer Fraud Act to include within its remedial scope, unconscionable commercial practices involving the sale and advertisement of real estate. L. 1975, c. 294. And see generally Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604-605, 691 A.2d 350 (1997). Moreover, the disclosures required by the two statutes specifically referred *870 to in N.J.S.A. 46:3C-10d were expressly intended to protect certain classes of home buyers, including purchasers of condominium and cooperative units, who have little bargaining power against developer-sponsors. And the entire complex of environmental protection laws and their liberal interpretation by the courts evinces both the recognition of and commitment to environmental safety and the redress of victims of environmental contamination. See generally Citizens for Equity v. Dep't of Env. Protection, 126 N.J. 391, 599 A.2d 507 (1991); Ayers v. Tp. of Jackson, 106 N.J. 557, 525 A.2d 287 (1987).
It is in the context of this framework that we consider Strawn and the responsive Disclosure Act. Strawn involved a claim for damages by more than one hundred and fifty families who bought new homes in close proximity to a hazardous-waste dump site, basing their claims on "common-law principles of fraud and negligent misrepresentation, and the New Jersey Consumer Fraud Act...." 140 N.J. at 49, 657 A.2d 420. In reviewing the development of the law affording remedies to home purchasers, and particularly the purchasers of new homes from professional sellers, i.e., builder-developers and their agents, the Court concluded that an action would lie under both the common law and the Consumer Fraud Act not only "for affirmative and intentional misrepresentation" but also "for nondisclosure of off-site physical conditions known to it and unknown and not readily observable by the buyer if existence of those conditions is of sufficient materiality to affect the habitability, use, or enjoyment of the property and, therefore, render the property substantially less desirable or valuable to the objectively reasonable buyer." Id. at 65, 657 A.2d 420.
In reaching this holding, the Court expressly rejected the argument of the builder-developer-defendants that their liability should be limited, vis-a-vis disclosure of off-site conditions, to conduct constituting unconscionable commercial practices within the Consumer Fraud Act,[2] concluding that nondisclosure would be actionable as well under common law principles. We are persuaded that it is only the applicability of common-law causes not comprehended by the Consumer Fraud Act that the Legislature intended to abrogate by passing the Disclosure Act. It is well settled that while the Consumer Fraud Act imposes liability both for affirmative misrepresentations and for omissions or failures to disclose, ordinarily only affirmative misrepresentations may be actionable if not made knowingly. Omissions of disclosure, to the contrary, are actionable only if the defendant "acted with knowledge," that is, the failure to disclose was intentional. Gennari v. Weichert Co. Realtors, supra, 148 N.J. at 605, 691 A.2d 350; Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 603, 581 A.2d 91 (App. Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991). We are satisfied that it was preservation of the element of intent, which results in imposition of a more fairly certain and ascertainable obligation of the seller, that was the Legislature's primary concern. Indeed, it so implied in its statement of findings and declaration, N.J.S.A. 46:3C-2, which reads in full as follows:
The Legislature finds and declares that the purchase of a residence involves a substantial portion of the average household's net worth, and the decision to purchase a particular residence requires consideration of a wide range of factors concerning the area in which the residential real estate is located; that the professionals who engage in the business of selling newly-constructed residential real estate can facilitate prudent decision-making with respect to the purchase of residences by advising *871 purchasers of the availability of information concerning factors which can reasonably be determined to exist and which may affect the value of the residence; that the due diligence responsibilities of purchasers and the disclosure duties of sellers of residential real estate are mutually interdependent and, therefore, ambiguity in the definition and assignment of the sellers' disclosure duties may inadvertently diminish the due diligence efforts of purchasers, or unnecessarily increase the costs of residential real estate transactions; and that there currently exists ambiguity concerning the disclosure duties of the sellers of residential real estate.
The Legislature therefore determines that it is in the public interest to define the entirety of the disclosure duties of the sellers of newly-constructed residential real estate and to create a public repository of relevant off-site conditions which may be accessed by purchasers of such real estate [Emphasis added].
We are also satisfied that limiting the professional seller's obligations and liability to those embraced and defined by the Consumer Fraud Act meets its stated concerns and fully accommodates the legislative purpose of striking a balance between the interests of the new home purchaser and the builder-developer-seller.
We are mindful that the Disclosure Act, by its terms, does not purport to address seller obligations respecting on-site conditions. Nor does it purport to address affirmative misrepresentations respecting both on- and off-site conditions. Since failure of disclosure is its sole subject, these matters do not come within the ambit of the Disclosure Act. Thus the only question is whether an intentional and knowing failure to disclose material off-site conditions actionable under the Consumer Fraud Act, as opposed to an innocent or negligent failure, is embraced by the immunity of the Disclosure Act. We are convinced that an intentional and knowing omission, so clearly constituting an unconscionable commercial practice, was not intended by the Legislature to be immunized. Such an immunization runs counter to the jurisprudence and public policy that have consistently guided the courts and the Legislature for more than a quarter of a century in defining and expanding the rights of consumers and patently constitutes a protection for unconscionable conduct that our Legislature cannot reasonably be assumed to have intended.
We have thus come around full circle. The Governor understood the Disclosure Act as preserving the remedies available to home purchasers under the Consumer Fraud Act. For the reasons we have stated, we are persuaded that that reading is consistent both with the text of the Disclosure Act and its legislative purpose and intent.
Plaintiffs have also challenged the retroactivity provision of N.J.S.A. 46:3C-10d, arguing that it both impairs vested rights and constitutes a manifest injustice. See Phillips v. Curiale, 128 N.J. 608, 608 A.2d 895 (1992). We need not address these arguments for two reasons. First, survival of the Consumer Fraud Act claim substantially blunts both prongs of the argument since plaintiffs are not deprived of a remedy. Beyond that, the essential theory of the claim that they advance, despite its disparate pleading, is in essence consumer fraud, unaffected by the Disclosure Act. We cannot, however, but note that if the Consumer Fraud Act were not preserved, it would be anomalous indeed, if not draconian, that a piece of legislation that purports to recognize the rights to and expectations of new home buyers to fair dealing by the seller-developer and that purports to accommodate those rights to the legitimate commercial needs of seller-developers would nevertheless leave buyers whose transactions were consummated either before the effective date of the Disclosure Law or whose transactions were consummated prior to the date fixed therein for compilation and distribution of the required lists with absolutely no remedy at all, not even the limited remedy fashioned by the Disclosure Act. Obviously such a result would not be an accommodation *872 of competing interests but rather the total disregard of the interests of a substantial segment of one of the interest groups, the new home purchasers. We do not believe that this is what the Legislature intended.
As we have pointed out, there has not yet been any meaningful discovery by which plaintiffs can attempt to demonstrate, at least prima facie, the intent and knowledge of defendants in concealing from them the close proximity to the condominium project of a Superfund site, a fact which clearly adversely and materially affected the use, enjoyment and value of their homes. They must have that opportunity now. As Strawn suggests, defendants' promotional materials, the facts surrounding their land use applications to governmental boards and bodies, and the pertinent communications between defendants and the New Jersey Departments of Environmental Protection and Community Affairs, will, among other avenues of inquiry, be highly relevant.
The summary judgment dismissing the count of the complaint pleading a cause of action under the Consumer Fraud Act is reversed and the matter remanded for further proceedings. In all other respects the judgment appealed from is affirmed.
NOTES
[1] N.J.S.A. 46:3C-3 defines the nine off-site conditions to which the Act is applicable as Superfund sites, hazardous discharge sites listed by the New Jersey Department of Environmental Protection, certain overhead transmission lines, electrical transformer substations, underground gas transmission lines, certain sewer pump stations and sewer trunk lines, sanitary landfills, public wastewater treatment facilities, and airport safety zones.
[2] In restating the defendants' argument, the Strawn Court noted the congruence between the unconscionable commercial practices interdicted by the Consumer Fraud Act and conduct "shocking to the ethical sense of the community," within the intendment of Restatement (Second) of Torts § 551(2)(e) comment 1 (1977). Ibid. at 60-61, 657 A.2d 420.