SMALL, P.J.T.C.
This case arises from the denial of the plaintiffs application for Property Tax Reimbursement (“PTR”) under N.J.S.A. 54:4-8.67 for the 2005 and 2006 tax years. The statute under which the PTR is authorized defines an eligible claimant as follows:
“Eligible claimant” means a person who:
is 65 or more years of age, or who is a disabled person; is an owner of a homestead, or the lessee of a site in a mobile home park on which site the applicant owns a manufactured or mobile home; has an annual income of less than $17,918 in tax year 1998, less than $18,151 in tax year 1999, or less than $37,174 in tax year 2000, if single, or, if married, whose annual income combined with that of the spouse is less than $21,970 in tax year 1998, less than $22,256 in tax year 1999, or less than $45,582 in tax year 2000, which income eligibility limits for single and married persons shall be subject to adjustments in subsequent tax years pursuant to section 9 of P.L. 1997, c. 348 (C.54:4-8.68);
as a renter or homeowner, has made a long-term contribution to the fabric, social structure and finances of one or more communities in this State, as demonstrated through the payment of property taxes directly, or through rent, on any homestead or rental unit used as a principal residence in this State for at least 10 consecutive years at least three of 'which as owner of the homestead for which a homestead property tax reimbursement is sought prior to the date that an application for a homestead /rroperitj tax reimbursement is filed.
[N.J.S.A. 54:4-8.67 (emphasis added).]
The Director concedes that Ms. Anderson, the plaintiff in this case, met all of the definitions of an eligible claimant except for the three-year residence at the property for which the property tax reimbursement was sought.[1]
Based on the undisputed facts, I find that the plaintiffs failure to reside in and pay taxes on her property at 103 Chesapeake Bay Court for three years prior to January 1, 2005 and January 1, 2006 *144 make her ineligible to receive the PTRs for the 2005 and 2006 tax years. No theory of equity or law can overcome the clear legislative mandate of the plain language of the statute.
I.
Ms. Anderson is the sole owner of a residential property located at 103 Chesapeake Bay Court, Atlantic City. She has owned and occupied this residence since sometime after April 1, 2004. She moved to this residence after she exchanged it for her prior residence at 235 North Connecticut Avenue, also in Atlantic City. The New Jersey Casino Reinvestment Development Authority (the “CRDA”) had threatened to take, by eminent domain, the residence located at 235 North Connecticut Avenue. Rather than resist this taking and the administrative complexities of condemnation, she accepted the property at 103 Chesapeake Bay Court in exchange for the property at 235 North Connecticut Avenue. It appears that there was no consideration paid in addition to the simple exchange of residences. Taxpayer owned and occupied her previous residence between 1995 and sometime after April 1, 2004.
Ms..Anderson applied for but was denied PTRs for tax years 2005 and 2006. This appeal followed.
In her motion for summary judgment under R. 4:46-1, taxpayer claims that she is an eligible claimant under N.J.S.A. 54:4-8.67 despite having not resided at 103 Chesapeake Bay Court for three consecutive years prior to the filing of her rebate applications because the statute’s construction indicates that there is in fact no three-year residency requirement for claimant eligibility. Taxpayer contends the language “merely suggests the manner in which a claimant could” meet the statute’s requirement that an eligible claimant demonstrate her “long-term contribution” to New Jersey. In the alternative, taxpayer claims that this court should, consistent with the Legislature’s intention to provide taxpayers relief from rising property taxes, tack the years for which her initial eligibility was established by residing at 235 North Connecticut Avenue to the years she has resided at 103 Chesapeake Bay *145 Court, so that taxpayer would meet the three-year residency requirement and be eligible for the PTRs.
The Director cross-moves for summary judgment under R. 4:46-1, arguing that the language of N.J.S.A. 54:4-8.67 clearly sets forth a three-year residency requirement for claimant eligibility. Because taxpayer did not own and occupy her residence at 103 Chesapeake Bay Court since before January 1, 2002 and January 1, 2003, the Director argues that the taxpayer did not meet the residency requirement for years 2005 and 2006, respectively. Thus the Director claims that she properly determined that taxpayer is ineligible for PTRs for both years. The Director further argues that the residency requirement should be strictly construed, and that the principle of tacking is inapplicable to the facts and law of this case.
II.
Taxpayer contends that she is an eligible claimant under N.J.S.A. 54:4-8.67 despite not having resided at 103 Chesapeake Bay Court for three consecutive years prior to the filing of her 2005 and 2006 PTR applications. She reasons that the statute’s construction indicates that the language “merely suggests the manner in which a claimant could” meet the statute’s prior condition that an eligible claimant demonstrate a long-term contribution to New Jersey.
In Hubbard v. Reed, 168 N.J. 387, 774 A.2d 495 (2001), our Supreme Court discussed the courts’ role in eases requiring statutory construction. That Court stated, in pertinent part:
Because this case requires us to engage in statutory construction, our “overriding goal must be to determine the Legislature’s intent.” The first step in determining the Legislature’s intent is to look at the plain language of the statute. As a general rule, when the language of a statute is clear on its tace, “the sole function of the courts is to enforce it according to its terms.” Nevertheless, we also have stressed that “where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control.” Thus, when a “literal interpretation of individual statutory terms or provisions” would lead to results “inconsistent with the overall purpose of the statute,” that interpretation should be rejected.
fId. at 392-93, 774 A.2d 495 (citations omitted).]
*146 In other words, if the Legislature enacts a statute that is clear on its face, this court should not look beyond the statutory language and should give “that language its ordinary or general meaning as long as that meaning comports with the statute’s legislative intent.” Campo Jersey, Inc. v. Director, Div. of Taxation, 22 N.J.Tax 251, 267 (2005) (citing Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999)).
Here, the plain language of N.J.S.A 54:4-8.67 defines an “eligible claimant” in part as a taxpayer who “as a renter or homeowner, has made a long-term contribution to the fabric, social structure and finances of one or more communities in this State____” The statute then defines how a taxpayer must establish such contribution, “as demonstrated through the payment of property taxes directly, or through rent, on any homestead or rental unit used as a principal residence in this State.” Ibid. The statute further defines the period of time for which a taxpayer must establish such contribution, “for at least 10 consecutive years at least three of which as owner of the homestead for which a homestead property tax reimbursement is sought prior to the date that an application for a homestead property tax reimbursement is filed.” Ibid.
I find from this plain language that the durational phrase refers to and defines the “long-term” period for which a taxpayer must establish a contribution to the State in order to meet the definition of a claimant eligible for a PTR. Taxpayer asserts that, because the conditional language contains the terms “as demonstrated through” rather than “is or has demonstrated through,” the three-year residency requirement is not an exclusive condition but merely “one way for an eligible claimant to establish their long-term contribution to the State.” However, applying taxpayer’s logic to other conditional language in the statute, use of the terms “as a renter or homeowner” rather than “is a renter or homeowner” would similarly be construed as merely suggestive of one type of eligible claimant rather than limiting such to homeowners and renters, which explicitly defines and limits the Legislature’s intended class of eligible claimants. See N.J.S.A. 54:4—8.57 to *147 -8.67; Senate Assembly Appropriations Committee Statement, Bill Nos. 3607 and 3609, L. 1990, c. 61.
This construction is consistent with at least two canons of statutory construction: (1) “[sjtatutes must be read as a whole, giving effect where possible to every word,” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 321, 526 A.2d 1029 (1987) (citations omitted); see also Presbyterian Home at Pennington, Inc. v. Pennington Bor., 23 N.J.Tax 473, 497 (2007); Stephen Little Trucking v. Director, Div. of Taxation, 19 N.J.Tax 461, 465 (2001), and (2) “[a]ny interpretation which makes any part of the language of the statute ineffective, superfluous, inoperative or meaningless must be avoided.” Township of Franklin v. State, Dep’t of Envt’l Prot., 7 N.J.Tax 224, 229 (1984).
If I were to interpret the statute’s condition, “at least three of which as owner of the homestead for which a homestead property tax reimbursement is sought” as merely suggestive of one way to demonstrate a long-term contribution, it would render the words “at least” before the phrase “three of which as owner of the homestead” without effect and wholly meaningless. Additionally, if the Legislature intended that a taxpayer could demonstrate a “long-term contribution” to the State by owning a homestead and making property tax payments thereon for a period less than the three years required prior to the filing of applications, then its inclusion of durational language requiring the three-year ownership and residence would be superfluous.
While I find that the statute is clear on its face, the language should only be given its ordinary meaning if such meaning comports with the statute’s legislative intent. See Campo Jersey, supra, 22 N.J. Tax at 267. I find that the ordinary meaning of the durational language does comport with the Legislature’s intent for including the three-year residency requirement within the statute.
Our Supreme Court noted in State v. McQuaid, 147 N.J. 464, 480, 688 A.2d 584 (1997), that “official legislative history and legislative statements serve as valuable interpretive aid in determining the Legislature’s intent.” Here, the Director correctly *148 describes the legislative history behind the inclusion of the three-year durational language in N.J.S.A. 54:4-8.67 as follows:
When N.J.S.A. ¡14:4-8.67 initially passed the Assembly and the Senate as L. 1997, c. 348, the language “at least three of which as owner of the homestead for which a homestead property tax reimbursement is sought” was not in the bill. It was only when former Governor Whitman conditionally vetoed the bill and sent it back to the Assembly with her recommended amendments that the above referenced language was adopted.
[citing A. 3, enacted as L. 1997, c. 348 (3rd Reprint); see also News Release of Governor, January 14, 1998 and attached conditional veto message at Page 2, Section 141, line 27 dated January 12,1998.]
Specifically the conditional veto message recommended that the language requiring ten years ownership of a homestead in this state be further limited by the following specific language, “at least three of which as owner of the homestead for which a homestead property tax reimbursement is sought.” The bill ultimately enacted into law contained that language.
Such legislative history compares to that reviewed by the Appellate Division in Nobrega v. Edison Glen Assocs., 327 N.J.Super. 414, 743 A.2d 864 (App.Div.2000). In that ease, the Appellate Division, construing a provision of the New Residential Construction Off-Site Conditions Disclosure Act (the “Disclosure Act”), L. 1995, c. 253, N.J.S.A 46:3C-1 to -12, determined the legislative intent behind the Disclosure Act’s enactment by relying on a relevant statement by the Governor made on the date of the statute’s enactment. Id. at 422-23, 743 A.2d 864. The court stated, “[i]n our view, nothing could be plainer or more unequivocal as an exposition of legislative intent as understood by the Chief Executive and as accepted by her in signing the bill into law.” Id. at 422, 743 A.2d 864.
As the court reasoned in Nobrega, I find the Governor’s conditional veto of the bill indicating that she would approve the bill with the addition of a three-year durational requirement indicative of the Legislature’s intent to mandate, rather than suggest, that taxpayers meet a three-year residency requirement before they become eligible to receive a PTR. In effect, the Governor’s suggestion made clear that the three-year language was not suggestive, but specifically required.
*149 The Legislature’s repeated failure to amend the statute by failing to adopt at least five separate bills over the past ten years that proposed removing or modifying the three-year residency language is indicative of its acceptance of the three-year residency requirement. See, e.g., S.1794 (1999); S.137 (2000); S.333 (2002); A.2277 (2002); A.3493 (2006). The introduction of the legislation and the statements on those bills reflects an understanding, of at least the sponsoring legislators, that the three-year requirement imposes an unwanted burden on some of their constituents.
Despite taxpayer’s contrary assertion, I find that the Legislature’s failure to amend N.J.S.A. 54:4-8.67 is significant in that it enables this court to verify that the plain meaning this court gives the statutory language, as discussed above, comports with the statute’s legislative intent in including the three-year residency requirement within the statute. Campo Jersey, supra, 22 N.J. Tax at 267.
The Director correctly summarizes the Legislature’s inaction with regard to the Homestead Rebate Act. The Legislature first attempted to amend L. 1997, e. 348 by introducing a bill, S.1794, 208th Leg. (1999), which proposed a change to the statutory language as follows, “for at least 10 consecutive years during at least three of which [as owner of the homestead for] the person has been a resident of the same municipality in which a homestead property tax reimbursement is filed....” Ibid. (Additions underscored, deletions bracketed). The amendment was reported out of committee but never voted on by the full Senate. Ibid. Thereafter, the Legislature introduced several bills proposing virtually identical amendments to claimant eligibility requirements, which were never voted on. See S.137, 209th Leg. (2000); S.333, 210th Leg. (2002). The Legislature then introduced another bill proposing to further revise the definition of “eligible claimant,” which provided as follows:
for at least 10 consecutive years at least three of which as owner of the homestead for which a homestead property tax reimbursement is sought prior to the date that an initial application for a homestead property tax reimbursement is filed. A person who has been an eligible claimant for a previous tax year shall qualify as an eligible claimant for the second full tax year following a move to another *150 homestead in Neto Jersey, despite not meeting the three-year minimum residency and ownership requirement for initial claimants under this paragraph.
[A.2277, 210th Leg. (2002).]
This amendment was referred to committee but never voted on. In the following year, the same amendment was introduced as a bill in the Assembly, A.2296, 211th Leg. (2004), and then pre-filed for consideration in the Senate as S.320, 212th Leg. (2006); however, these proposed bills were never voted on.
In 2006, proposed amendments most relevant to this ease were introduced in the Assembly. See A.3493, 212th Leg. (2006). This bill proposed adding the following language to the statute’s claimant eligibility requirements which the statement of the sponsors explained:
The bill would also require that, in the case of an eligible claimant who subsequently moves from the homestead for which the initial eligibility was established as the result of action taken pursuant to the “Eminent Domain Act of 1971,” P.L. 1971, c. 361 (C.20:3-l et seq.), the base year shall be a prior tax year of the new homestead property equal to the number of years that the person has been an eligible claimant, up to three years.
[Statement to A. No. 3493 (2006).]
This bill was never reported out of committee for a vote. The Legislature introduced the same amendments in another bill in the Assembly this year, but the amendments have yet to be voted on. A.631, 213th Leg. (2008).
Although the Legislature has failed to amend the statute’s definition of claimant eligibility, its intent to require taxpayers to make a long-term contribution to the State as quid pro quo for property tax reimbursements is made clear from the text of the bills discussed above. All of the bills propose modifying the statute’s current three-year residency requirement to make it easier for taxpayers, such as Ms. Anderson, to meet the eligibility requirements for the PTR. In fact, referring to the statute, statement at A.631 (2008) states: “[a]n eligible claimant who moves from one home to another, even if the home is taken through the use of eminent domain, is effectively barred from eligibility to receive a homestead property tax reimbursement until he or she owns the new residence for three years.” Despite the Legislature’s failure to amend the statute to address situations *151 where taxpayers are displaced by eminent domain, the text of the proposed amendments demonstrates that the Legislature has expressly contemplated granting relief to taxpayers, such as Ms. Anderson, from the three-year residency requirement. Therefore I find that the plain meaning of the statutory language, that an eligible claimant must reside three years at the residence for which the claimant seeks reimbursement prior to filing rebate applications, comports with the statute’s legislative intent and the current understanding of at least those legislators who have sponsored all of the above-referenced bills.
Despite taxpayer’s contention, I find that the Director correctly determined that the language of N.J.S.A. 54:4-8.67 sets forth a three-year residency requirement for claimant eligibility. Because Ms. Anderson did not own and occupy her residence at 103 Chesapeake Bay Court from before January 1, 2002 and January 1, 2003, she did not meet that requirement for tax years 2005 and 2006.
III.
Ms. Anderson also argues that, should this court find that N.J.S.A. 54:4-8.67 imposes a three-year residency requirement on eligible claimants, then, consistent with the Legislature’s intention to provide taxpayers relief from rising property taxes, Rubin v. Director, Div. of Taxation, 166 N.J.Super. 258, 265, 399 A.2d 984 (App.Div.1979); Rutgers Univ. Legislative Affairs Council, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 642, 650-51 (1992), this court should tack the years for which taxpayer’s initial eligibility was previously established to the years she has resided at 103 Chesapeake Bay Court so that she would meet the three-year residency requirement and be eligible for the PTRs. The Director contends that the statute, as currently drafted, does not allow a claimant to tack on years for which eligibility was established to those years during which the claimant resided at the new homestead, making the principle of tacking inapplicable to Ms. Anderson’s appeal. The Director further argues that this court may not substitute its judgment over that of the Legislature and *152 create an exception to the residency requirement where none exists in the statute.
This issue is one of first impression. It is unsettled under New Jersey law whether this court should, where a claimant moves as a result of eminent domain from a homestead for which initial claimant eligibility was established under N.J.S.A. 54:4-8.67, allow the tacking of such years to those that the claimant has resided at the new homestead so that the claimant can meet the three-year residency requirement and become eligible for property tax reimbursement. This court has found no federal or state court determination or statute clarifying this issue.
“[I]n tax matters exceptions to the rules and exemptions are almost always strictly construed,” Van Winkle v. Rutherford Bor., 12 N.J.Tax 290, 298 (1992) (citing Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 172 A.2d 420 (1961)). Further, our courts have held that “there is no justifiable distinction between a tax exemption and a rebate.” Hovland v. Director, Div. of Taxation, 204 N.J.Super. 595, 599, 499 A.2d 1017 (App.Div.1985) (citing MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 178, 434 A.2d 620 (App.Div.1981), aff'd, 89 N.J. 216, 445 A.2d 397 (1982), for the proposition that “[tjhere seems to be little difference between not taking the money in the first instance and later refunding it or part of it”).
The principle of tacking has been accepted by our courts in the context of the law of adverse possession. Taxpayer argues that the same principle is a basis for this court to tack the years for which a claimant’s initial eligibility was established to the years the claimant has resided at the new homestead. For example, N.J.S.A. 2A: 14-31 requires thirty years of actual, uninterrupted possession of land in order to bar all prior rights, titles and conveyances and vest an absolute right and title to the occupier of real estate. Although the statute does not address the principle of tacking consecutive periods of adverse use, our courts recognize that “[a]s a general rule, successors in title who continue adverse uses may tack the periods of adverse uses of predecessors to establish the statutory period.” Stump v. Whibco, 314 N.J.Super. *153 560, 567, 715 A.2d 1006 (App.Div.1998) (citing Kruvant v. 12-22 Woodland Ave. Corp., 138 N.J.Super. 1, 350 A.2d 102 (Law Div. 1975), aff'd, 150 N.J.Super. 503, 376 A.2d 188 (App.Div.1977)). Our courts have held the principle of adverse possession allows “successors in title” to tack consecutive periods of adverse use in order to establish the statutorily required time period. Ibid. Such principle is distinguishable from the facts in this case, as here taxpayer lacks privity with another title holder, which adverse possession requires. Absent more concrete legislative direction, this court may not apply the principle of tacking to taxpayer’s appeal where doing so would require application of equitable principles in dissimilar contexts, and would result in a conclusion different from that which results from a plain reading of the statute’s clear and unambiguous language.
I note that my conclusion to deny the application of tacking to taxpayer’s appeal is consistent with rulings in other jurisdictions which have denied the request to apply the principle of tacking in order to meet legislative residency requirements for other purposes. See, e.g., White v. Knight, 424 So.2d 566, 568-69 (Ala.1982) (rejecting the plaintiff’s claim to tack former years of residency to meet the statute’s requirement that citizens and residents have resided in state for the three years prior to their state senate campaigns “so that the elected senator would possess, or would have had an opportunity to possess, knowledge of the needs of the people of the state at large” which the use of tacking would not accomplish); Oglesby v. Williams, 372 Md. 360, 380-85, 812 A.2d 1061 (Md.Ct.App.2002) (rejecting the plaintiffs claim to tack together periods of residency in any county to meet the Maryland Constitution’s two-year residency requirement for election to the office of the State’s Attorney because the requirement “of residence for political or voting purposes is one of a place of fixed, piresent domicile”).
 Here, despite the seemingly inequitable result yielded by the application of the plainly read statute to taxpayer’s case, I find that the statute must be strictly construed and, as currently written, does not allow a claimant to tack years lor which eligibility was established for the previous homestead to those years in *154 which the taxpayer resided at the new homestead in order to meet the statute’s three-year residency requirement. Mindful that an “unduly rigid” interpretation of statutory language may “fail[ ] to comport with the legislative purpose” of the statute, Hovland, supra, 204 N.J.Super, at 598, 499 A.2d 1017 (disavowing the more restrictive ruling in Perrine v. Director, Div. of Taxation, 4 N.J.Tax 335, 342 (1982) that courts cannot add to the statute of limitations exceptions not contained therein), this court must, where a statute is clear on its face, “construe and apply the statute as enacted.” Daidone v. Buterick Bulkheading, 191 N.J. 557, 565, 924 A.2d 1193 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)) (emphasis added) (internal quotation marks omitted). Further, this court “cannot both conclude that the Legislature has spoken clearly and unambiguously about its intentions and at the same time rely on [its own] view of equity to achieve a different result.” Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 582, 940 A.2d 1202 (2008) (Long, J., dissenting). Accordingly, because I find that the statute as enacted and currently drafted clearly and unambiguously imposes a three-year residency requirement on claimants in order to become eligible for reimbursement, I reject taxpayer’s contention that equity requires this court to reach another result through the application of the principle of tacking.
IV.
In Mills v. East Windsor Tp., 176 N.J.Super. 271, 1 N.J.Tax 178, 422 A.2d 819 (1980), this court attempted to provide senior citizen taxpayers with homestead tax rebates by reading the statute expansively. The Tax Court was reversed and roundly criticized by the Appellate Division for reaching beyond the plain meaning of a statute similar to N.J.S.A. 54:4-8.67. MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 434 A.2d 620 (App.Div.1981), aff'd, 89 N.J. 216, 445 A.2d 397 (1982).[2] Despite a *155 compelling and compassionate dissent by Justice Pashman, 89 N.J. 216, 217, 445 A.2d 397 (1982) (Pashman, J., dissenting), the Appellate Division reversal was sustained by our Supreme Court relying on the opinion below. That opinion stated in pertinent part:
We respect the demonstrated humanity of the tax court judge. We are not sufficiently insensitive to demean his concern for “common sense” or his reach for the “equity of the statute” principle. We are not sufficiently bold to gainsay stubbornly his conviction that “if the Legislature were [today] to consider squarely the status of retirement community residents it would treat them for purposes of the act the same as ‘tenants for life’ and accordingly as eligible for the rebate.” But we remain judges and as such cannot succumb to the humanistic pressures or substitute our concern in place of the legislative design. Indeed, we may not even permit ourselves the luxury of liberal construction—or, as a matter of fact, any construction—if the words of the statute plainly convey the legislative intent, as we are persuaded they do here. We must enforce the legislative will as written. Dacunzo v. Edgye, 19 N.J. 443, 451, 117 A.2d 508 (1955). We certainly may not supply a provision no matter how confident we are of what the Legislature would do if it were to reconsider today. Stamboulos v. McKee, 134 N.J.Super. 567, 342 A.2d 529 (App.Div.1975). “Construing” or “interpreting” a clear and unambiguous statute is simply not permissible.
[MacMillan, supra, 180 N.J.Super, at 177,434 A.2d 620.]
The Appellate Division went on at length cautioning against the judiciary’s intervention into the Legislature’s authority when the Legislature had spoken in clear and unambiguous language.
More recently, our Supreme Court, in permitting the application of the judicial doctrine of manifest injustice to justify the modification of legislation, was careful to confine that doctrine to disallowing retroactive application of a statute. Three of the justices rejected the use of that doctrine even for those limited purposes. Oberhand, supra, 193 N.J. at 574, 940 A.2d 1202 (Albín, J., concurring); id. at 579, 940 A.2d 1202 (Long, J., dissenting).
Accordingly, higher court mandates, which I am compelled to follow, simply do not allow any leeway in interpreting the plain meaning of the PTR statute.* *[3]
*156 The principle of tacking is not applicable to taxpayer’s claim, and therefore, taxpayer did not meet the statute’s three-year residency requirement. Accordingly, taxpayer is not entitled to reimbursements for property tax payments made for her current homestead by tacking on the period that she paid taxes at her prior residence.
V.
This is a case in which the law as written and my authority as a judge to interpret that law compel a result which is, in my judgment, inequitable. The power to change the result rests with the Legislature which has almost annually, since the enactment of the governing statute, failed to act on bills designed in part to avoid this inequitable result. Were I to remedy the Legislature’s failure to act, I would do greater violence to the doctrines of judicial restraint and separation of powers than I do in interpreting the law as written. The case also demonstrates the unforeseen collateral consequences of the use of the power of eminent domain and its failure to truly make whole those whose property is seized.
Although I can provide no relief for this taxpayer in this forum, two avenues of redress, at least for other similarly situated citizens, suggest themselves: (1) Enactment of legislation such as that embodied in the bills discussed above in part II (and those bills might have retroactive effect), ¡see L. 2001, c. 18, § 1 (enacted specifically to change the result in Roman Catholic Archdiocese of Newark v. East Orange City, 17 N.J.Tax 298 (1998), aff'd, 18 N.J. Tax 649 (App.Div.2000)); (2) In an eminent domain proceeding, compensating a homeowner, not only for her loss of the taken dwelling, but also for the loss of her PTR rights which are conditioned on a continuity of residence which will be interrupted *157 by the eminent domain taking. A true and real cost to the person whose residence is taken by the condemning authority should be borne by the condemning authority and not the citizen whose house is condemned.
A judgment will be entered denying the plaintiffs motion for summary judgment, granting the Director’s cross-motion, and dismissing the complaint.

 At oral argument, based on materials submitted to the defendant by the plaintiff the day before the argument, the Director first raised the issue of whether the plaintiff had resided for ten years and paid property taxes or rent for ten years on a principle residence in New Jersey. I indicated that I would allow the parties to supplement the record on this issue. However, since I conclude that plaintiff has failed to meet the three-year requirement, I need not make a determination on the ten-year requirement in order to deny plaintiff's claim.

 Mills and MacMillan were companion cases and although the named parties in the Tax Court opinion differ from the named parties in the Appellate Division and Supreme Court opinions, the courts made specific reference to the earlier *155 case in reversing the Tax Court and sustaining the conclusion of the Appellate Division. MacMillan, supra, 180 N.J.Super. at 176-77, 434 A.2d 620; 89 N.J. at 217, 445 A.2d 397.

 This is not a case such as Morris-Sussex Area Co., Boy Scouts v. Hopatcong Bor., 15 N.J.Tax 438, 450 (1996) (citing United States Nat'l Bank v. Independent *156 Insurance Agents, 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)), where I am free lo correct a “scrivener's error" in order to interpret the statute consistent with presumed legislative intent. Here there was no error, but a plain three-year requirement which the Legislature, given several opportunities, has failed to modify.